## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| MARC WATERMAN, | : | |
| | : | Case No. _____ |
| Plaintiff, | : | |
| | : | JURY TRIAL DEMANDED |
| v. | : | |
| | : | **COMPLAINT FOR VIOLATION OF THE** |
| MONEYGRAM INTERNATIONAL, INC., | : | **SECURITIES EXCHANGE ACT OF 1934** |
| W. ALEXANDER HOLMES, ANTONIO O. | : | |
| GARZA, ALKA GUPTA, FRANCISCO | : | |
| LORCA, MICHAEL P. RAFFERTY, JULIE | : | |
| E. SILCOCK, W. BRUCE TURNER, and | : | |
| PEGGY VAUGHAN, | : | |
| | : | |
| Defendants. | : | |

Plaintiff, by his attorneys, for this complaint against defendants, alleges the following upon personal knowledge with respect to himself, and upon information and belief based upon the investigation of counsel as to all other allegations herein:

## NATURE OF ACTION

1.      On February 15, 2022, MoneyGram International, Inc. ("MoneyGram" or the "Company") entered into an agreement and plan of merger (the "Merger Agreement") to be acquired by Mobius Parent Corp. ("Parent") and Mobius Merger Sub, Inc. ("Merger Sub") (the "Proposed Merger").

2.      Under the terms of the Merger Agreement, MoneyGram's stockholders will receive $11.00 in cash per share.

3.      On March 29, 2022, defendants filed a proxy statement (the "Proxy") with the U.S. Securities and Exchange Commission (the "SEC").

4.      As alleged herein, the Proxy fails to disclose material information regarding the Proposed Merger, and defendants violated Sections 14(a) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act").

## JURISDICTION AND VENUE

5.      This Court has jurisdiction over the claims asserted herein pursuant to Section 27 of the Exchange Act because the claims asserted herein arise under Sections 14(a) and 20(a) of the Exchange Act and Rule 14a-9.

6.      This Court has jurisdiction over defendants because each defendant is either a corporation that conducts business in and maintains operations within this District, or is an individual with sufficient minimum contacts with this District so as to make the exercise of jurisdiction by this Court permissible under traditional notions of fair play and substantial justice.

7.      Venue is proper under 15 U.S.C. § 78aa because the Proxy, which plaintiff alleges to be materially false and misleading, was transmitted by defendants into this District, including to plaintiff, who resides in this District.  *See, e.g., Wojtunik v. Kealy*, 2003 WL 22006240, at *5-6 (E.D. Pa. Aug. 26, 2003).

## THE PARTIES

8.      Plaintiff is and has been continuously throughout all relevant times the owner of MoneyGram common stock.  Plaintiff resides in this District.

9.      Defendant MoneyGram is a Delaware corporation.  MoneyGram's common stock is traded on the NASDAQ under the ticker symbol "MGI."

10.      Defendant W. Alexander Holmes is Chief Executive Officer and Chairman of the Board of Directors of MoneyGram (the "Board").

11.      Defendant Antonio O. Garza is a member of the Board.

12.     Defendant Alka Gupta is a member of the Board.

13.     Defendant Francisco Lorca is a member of the Board.

14.     Defendant Michael P. Rafferty is a member of the Board.

15.     Defendant Julie E. Silcock is a member of the Board.

16.     Defendant W. Bruce Turner is a member of the Board.

17.     Defendant Peggy Vaughan is a member of the Board.

18.     Defendants identified in ¶¶ 10-17 are referred to herein as the "Individual Defendants."

**SUBSTANTIVE ALLEGATIONS**

19.     MoneyGram is a global leader in the evolution of digital P2P payments, and delivers innovative financial solutions to connect the world's communities.

20.     The Company leverages its modern, mobile, and API-driven platform and collaborates with the world's top brands to serve consumers through its direct-to-consumer digital channel, global retail network, and embedded finance business for enterprise customers.

21.     On February 14, 2022, MoneyGram entered into the Merger Agreement.

22.     The press release announcing the Proposed Merger provides as follows:

MoneyGram International, Inc. (NASDAQ: MGI) (the "Company"), a global leader in the evolution of digital P2P payments, and Madison Dearborn Partners, LLC ("MDP"), a leading private equity firm based in Chicago, today announced a definitive agreement under which funds affiliated with MDP will acquire all outstanding shares of MoneyGram for $11.00 per share in an all-cash transaction valued at approximately $1.8 billion. The purchase price represents a meaningful premium of approximately 50% to MoneyGram's unaffected closing stock price on December 14, 2021, the last trading day prior to media speculation regarding a possible transaction.

"We are excited to enter into this transaction with MDP, which will deliver immediate and compelling value to shareholders and enable us to accelerate the advancement of our digital growth strategy," said Alex Holmes, MoneyGram Chairman and CEO. "This transaction is the culmination of a thorough process by the MoneyGram Board to enhance shareholder value while positioning our business

for continued growth and expansion. MoneyGram has undergone a rapid transformation over the last several years to expand our digital capabilities and adapt to the evolving needs of our customers. By partnering with MDP and becoming a private company, we will have greater opportunities to innovate and transform MoneyGram to lead the industry in cross-border payment technology and deliver a more expansive set of digital offerings, while leveraging our global platform for new customers and use cases. This transaction provides exciting opportunities for our dedicated MoneyGram team and partners, and I'm incredibly excited about the path ahead."

"MoneyGram is a leader in cross-border payments with one of the strongest brands and reputations in the industry, and we are excited to partner with Alex and his leadership team as they continue to lead MoneyGram's digital growth strategy," said Vahe Dombalagian, a Managing Director on MDP's Financial and Transaction Services team. "We are looking forward to applying our substantial experience growing digital businesses and deep payments knowledge to help MoneyGram further strengthen its market-leading cross-border capabilities and enhance its digital platform. Alex and his team have transformed MoneyGram over the past few years, and we are excited to help them execute the important work ahead to continue evolving and growing MoneyGram's business."

**Transaction Details**

Under the terms of the agreement, which was unanimously approved by the MoneyGram Board of Directors, MoneyGram shareholders will receive $11.00 in cash for each share of MoneyGram common stock they own. In addition, upon the closing of the transaction MDP will be refinancing the Company's outstanding debt, which was $799 million as of December 31, 2021.

Committed debt financing for the transaction has been provided by Goldman Sachs & Co. LLC, Deutsche Bank Securities Inc. and Barclays. The transaction is expected to close in the fourth quarter of 2022, subject to customary closing conditions, including approval by MoneyGram shareholders and receipt of regulatory approvals, including required approvals in various jurisdictions related to money transmitter licenses. Upon completion of the transaction, MoneyGram will become a private company and MoneyGram shares will no longer be listed on any public market.

The agreement includes a 30-day "go-shop" period expiring on March 16, 2022. During this period, the MoneyGram Board and its advisors are permitted to actively initiate, solicit, encourage and evaluate alternative acquisition proposals, and potentially enter into negotiations with any parties that may offer alternative acquisition proposals. MoneyGram will have the right to terminate the MDP agreement to enter into a superior proposal subject to the terms and conditions of such agreement. There can be no assurance that this "go-shop" process will result in a superior proposal or that any other transaction will be approved or completed. MoneyGram does not intend to disclose developments with respect to the go-

shop process unless and until its Board of Directors determines such disclosure is appropriate or is otherwise required.

**Leadership and Headquarters**

Following the close of the transaction, it is expected that MoneyGram will continue to operate under the MoneyGram brand and be led by Alex Holmes and the Company's existing leadership team. MoneyGram will maintain its headquarters in Dallas, Texas.

**Advisors**

BofA Securities, Inc is serving as exclusive financial advisor to MoneyGram, Vinson & Elkins LLP is acting as legal counsel and Paul Hastings LLP is acting as financial services regulatory counsel.

Goldman Sachs & Co. LLC is acting as lead financial advisor to MDP, Deutsche Bank Securities Inc., Barclays and J.P. Morgan Securities LLC are acting as financial advisors to MDP and Latham & Watkins LLP, Kirkland & Ellis LLP and Covington & Burling LLP are providing legal counsel.

23.     On March 29, 2022, defendants filed the Proxy, which fails to disclose material information regarding the Proposed Merger.

<u>Financial Projections</u>

24.     The Proxy fails to disclose material information regarding MoneyGram's financial projections, specifically: the line items underlying the projections.

25.     The disclosure of projected financial information is material because it provides stockholders with a basis to project the future financial performance of a company, and allows stockholders to better understand the financial analyses performed by the company's financial advisor in support of its fairness opinion.

<u>Financial Analyses</u>

26.     The Proxy fails to disclose material information regarding the financial analyses conducted by BofA Securities, Inc. ("BofA").  When a banker's endorsement of the fairness of a

transaction is touted to shareholders, the valuation methods used to arrive at that opinion and the key inputs and range of ultimate values generated by those analyses must also be fairly disclosed.

27.     Regarding BofA's Selected Precedent Transactions Analysis, the Proxy fails to disclose: (i) the closing date of each transaction utilized by BofA; and (ii) the total value of each transaction utilized by BofA.

28.     Regarding BofA's Discounted Cash Flow Analysis, the Proxy fails to disclose: (i) the unlevered free cash flows utilized by BofA; (ii) the terminal values utilized by BofA; and (iii) the inputs and assumptions underlying the discount rates and multiples utilized by BofA.

29.     Regarding BofA's analysis of price targets, the Proxy fails to disclose: (i) the price targets utilized by BofA; and (ii) the sources of the price targets utilized by BofA.

### COUNT I

**Claim Against the Individual Defendants and MoneyGram for Violation of Section 14(a) of the Exchange Act and Rule 14a-9**

30.     Plaintiff repeats and realleges the above-referenced allegations as if fully set forth herein.

31.     The Individual Defendants disseminated the false and misleading Proxy, which contained statements that, in violation of Section 14(a) of the Exchange Act and Rule 14a-9, in light of the circumstances under which they were made, failed to state material facts necessary to make the statements therein not materially false or misleading.

32.     MoneyGram is liable as the issuer of these statements.

33.     The Proxy was prepared, reviewed, and/or disseminated by the Individual Defendants.  By virtue of their positions within the Company, the Individual Defendants were aware of this information and their duty to disclose this information in the Proxy.

34.     The Individual Defendants were at least negligent in filing the Proxy with these materially false and misleading statements.

35.     The omissions and false and misleading statements in the Proxy are material in that a reasonable stockholder will consider them important in deciding how to vote on the Proposed Merger.

36.     A reasonable investor will view a full and accurate disclosure as significantly altering the total mix of information made available in the Proxy and in other information reasonably available to stockholders.

37.     The Proxy is an essential link in causing plaintiff to approve the Proposed Merger.

38.     Accordingly, defendants violated Section 14(a) of the Exchange Act and Rule 14a-9.

39.     Plaintiff is threatened with irreparable harm.

## COUNT II

**Claim Against the Individual Defendants for Violation of Section 20(a) of the Exchange Act**

40.     Plaintiff repeats and realleges the above-referenced allegations as if fully set forth herein.

41.     The Individual Defendants acted as controlling persons of MoneyGram within the meaning of Section 20(a) of the Exchange Act as alleged herein.

42.     Due to their positions as officers and/or directors of MoneyGram and participation in and/or awareness of the Company's operations and/or intimate knowledge of the false statements contained in the Proxy, they had the power to influence and control and did influence and control, directly or indirectly, the decision making of the Company, including the content and dissemination of the various statements that plaintiff contends are false and misleading.

43.     Each of the Individual Defendants was provided with or had unlimited access to copies of the Proxy alleged by plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause them to be corrected.

44.     Each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company, and, therefore, is presumed to have had the power to control and influence the particular transactions giving rise to the violations as alleged herein, and exercised the same.

45.     The Proxy contains the unanimous recommendation of the Individual Defendants to approve the Proposed Merger.  They were thus directly involved in the making of the Proxy.

46.     Accordingly, the Individual Defendants violated Section 20(a) of the Exchange Act.

47.     The Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) of the Exchange Act and Rule 14a-9, by their acts and omissions as alleged herein.

48.     These defendants are liable pursuant to Section 20(a) of the Exchange Act.

49.     Plaintiff is threatened with irreparable harm.

**PRAYER FOR RELIEF**

**WHEREFORE**, plaintiff prays for judgment and relief against defendants as follows:

A.      Preliminarily and permanently enjoining defendants and all persons acting in concert with them from consummating the Proposed Merger;

B.      In the event defendants consummate the Proposed Merger, rescinding it and setting it aside or awarding rescissory damages;

C.      Directing the Individual Defendants to disseminate a Proxy that does not contain any untrue statements of material fact and that states all material facts required in it or necessary to make the statements contained therein not misleading;

D.      Declaring that defendants violated Sections 14(a) and/or 20(a) of the Exchange Act, as well as Rule 14a-9 promulgated thereunder;

E.      Awarding plaintiff the costs of this action, including reasonable allowance for attorneys' and experts' fees; and

F.      Granting such other and further relief as this Court may deem just and proper.

## JURY DEMAND

Plaintiff requests a trial by jury on all issues so triable.

Dated:  April 8, 2022

**GRABAR LAW OFFICE**

By: _____
Joshua H. Grabar (#82525)
One Liberty Place
1650 Market Street, Suite 3600
Philadelphia, PA 19103
267-507-6085
jgrabar@grabarlaw.com

*Counsel for Plaintiff*